

ENTERED
08/25/2020

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **CHARLES EUGENE BARNETT JR.** | § | **CASE NO: 20-30140** |
| Debtor | § | |
| | § | **CHAPTER 11** |
| _____ | § | |
| **SHELLPOINT MORTGAGE SERVICING,** | § | |
| **LLC** | § | |
| Plaintiff | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 20-3116** |
| | § | |
| **CHARLES EUGENE BARNETT JR.,** *et al* | § | |
| Defendant | § | |

## <u>MEMORANDUM OPINION</u>

### I.      INTRODUCTION

Shellpoint Mortgage Servicing, LLC is the holder of a secured claim in the approximate amount of $2,876,022.97, secured by the real property located at 12510 Cross Canyon Lane, Cypress, Texas 77433. Charles Eugene Barnett, Jr. seeks to dismiss the complaint filed by Shellpoint Mortgage Servicing, LLC because, according to Barnett, the complaint does not meet the particularity requirements of Federal Rule of Civil Procedure 9(b); nor does it state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Shellpoint Mortgage Servicing, LLC filed a motion for leave to amend its complaint to remedy any deficiencies alleged in Barnett's motion to dismiss.  For the reasons set forth below, the Court grants Shellpoint Mortgage Servicing, LLC's motion for leave to amend its complaint where it has successfully pled a claim under § 523(a)(2)(A) and denies Charles Eugene Barnett Jr.'s Motion to Dismiss.

## A. Procedural History

On January 7, 2020, Charles Eugene Barnett, Jr. ("*Barnett*") filed his initial petition and schedules under chapter 11 of title 11 of the United States Code.[1]   On March 30, 2020, Shellpoint Mortgage Servicing, LLC ("*Shellpoint*") filed its original complaint objecting to dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) ("*Complaint*").[2]   On May 29, 2020, Barnett filed a single pleading self-styled as "Defendant's Motion to Dismiss" ("*Motion to Dismiss*").[3]   On June 17, 2020, Shellpoint filed a Motion to Amend its Complaint and filed an Amended Motion for Leave to Amend Complaint (the "*Motion for Leave to Amend Complaint*") the same day, along with its proposed Amended Complaint for Determination of Dischargeability and Objection to Discharge Pursuant to Section 523(A)(2).[4]   On August 24, 2020, this Court held a hearing on Barnett's Motion to Dismiss and Shellpoint's Motion for Leave to Amend Complaint.

## II.    JURISDICTION & VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).  Venue is governed by 28 U.S.C. §§ 1408, 1409.  Here, venue is proper because the Court presided over the underlying Bankruptcy Case.[5]

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C. "Bankr. ECF" refers docket entries made in the Debtors' bankruptcy case, No. 20-30140.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 11.
[5] *See* Bankr. ECF No. 1.

III.        ANALYSIS

### A. Whether Shellpoint Mortgage Servicing, LLC's Amended Complaint Should Be Permitted.

This Court must first decide whether Shellpoint's Motion for Leave to Amend Complaint should be granted. Shellpoint reasons that pursuant to Federal Rule of Civil Procedure 15, which liberally allows amendments, Shellpoint should be afforded leave to amend its Complaint so it can remedy the alleged deficiencies pointed out by Barnett.[6] Rule 15 is applicable through Bankruptcy Procedure 7015. Because Shellpoint did not amend its Complaint within 21 days after Barnett filed his Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6), Shellpoint "may amend its pleading only with the opposing party's consent or the court's leave."[7] Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." And while trial courts hold great latitude in determining whether to grant leave to amend, and in fact, Rule 15 is poised in favor of allowing such, a court must consider whether factors such as "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment" exist.[8]

For a court to properly assess the factors, a movant must give the court some notice of the nature of its proposed amendments.[9] Here, Shellpoint provided this Court with its proposed amended complaint, which outlines Shellpoint's substantive arguments and remedies the deficiencies alleged by Barnett. Therefore, unless this Court finds a substantial reason to deny Shellpoint's Motion for Leave to Amend Complaint based on one or more of the factors, Shellpoint's request should be granted.

---

[6] ECF No. 11 at 2.
[7] FED. R. CIV. P. 15(a)(2).
[8] *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314–15 (5th Cir. 1996) (citations omitted).
[9] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

First, this Court finds that there is no undue delay, bad faith, or dilatory motive on part of Shellpoint.  Shellpoint filed its motion nineteen days after Barnett's Motion to Dismiss.  This does not constitute undue delay.[10]  Second, this is Shellpoint's first amendment and the intention of the amendment is to cure any deficiencies alleged by Barnett,[11] combatting any notion that this amendment is in bad faith.  As evidenced by Shellpoint's proposed amended complaint, Shellpoint is not adding any claims or parties to its Complaint and thus, the risk of undue prejudice to Barnett is nonexistent.

Third, the proposed amended complaint would not be futile.  To determine whether the amendment would be futile, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)."[12]  In order to state a claim under Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "well-pleaded facts . . . permit the court to infer more than a mere possibility of misconduct."[13]

In the proposed amended complaint, Shellpoint sets forth factual assertions and documents that adequately explain its factual allegations that Barnett's loan application: (1) lists a Wells Fargo account and a Bank of America account, neither of which ever existed; (2) Barnett submitted "falsified" bank statements; and (3) a cashier's check was presented at closing from the Wells Fargo account that never existed.  Therefore, Shellpoint's Motion for Leave to Amend Complaint is granted.  Because Shellpoint will be granted leave to amend, this Court will consider Shellpoint's proposed Amended Complaint, as opposed to its original Complaint, in

---

[10] *See, e.g.*, *Thomas*, 832 F.3d at 588 (allowing the amendment of a complaint after the filing of a motion for summary judgment).
[11] ECF No. 11 at 2.
[12] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (quotation omitted).
[13] 556 U.S. 662, 679 (2009).

determining whether Shellpoint has pleaded its claim with enough particularity under 11 U.S.C.

§ 523(a)(2)(A) to withstand Barnett's Motion To Dismiss.

**B. Barnett's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(b).**

In his Motion To Dismiss, Barnett argues that Shellpoint's Complaint does not adequately plead any claim under § 523(a)(2)(A) because the pleadings meet neither the particularity requirements of Federal Rule of Civil Procedure 9(b) nor state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[14]  As for Rule 9(b), Barnett argues that the Complaint lists three alleged facts and then generally concludes that the mortgage on the Property "was procured through false pretenses, a false representation, or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A)," but does not specifically identify which of the facts constitute the alleged fraud or explain how those facts relate to the elements of Shellpoint's claim.[15]  This, Barnett insists, leaves him guessing as to the exact nature of Shellpoint's claim.[16]

As an example, Barnett questions whether Shellpoint is asserting that each of the alleged misrepresentations in the facts is an instance of false pretense, false representation, or actual fraud under § 523(a)(2)(A).[17]  Barnett asserts that it's possible that Shellpoint intends for only one of the alleged misrepresentations to form the basis of its § 523(a)(2)(A) claim because perhaps the other representations were not relied on by Shellpoint; Shellpoint may have included the other representations merely to demonstrate Barnett's intent with respect to the actionable misrepresentation.[18]  Barnett posits that because Shellpoint does not identify what of the conduct it describes constitutes the false pretense, false representation, or actual fraud by which Barnett allegedly procured the mortgage, it is impossible to tell which of these situations is the case or

---

[14] ECF No. 9 at 2.
[15] *Id.* at 3.
[16] *Id.*
[17] ECF No. 9 at 3–4.
[18] *Id.* at 4.

whether Shellpoint is taking some other position.[19]   For this reason, says Barnett, Shellpoint fails

to plead its claim under § 523(a)(2)(A) with sufficient particularity under Rule 9(b).[20]

Rule 9(b) is applicable through Bankruptcy Rule 7009.   When a party alleges fraud or

mistake, it "must state with particularity the circumstances constituting fraud or mistake.   Malice,

intent, knowledge, and other conditions of a person's mind may be alleged generally."[21]   The

heightened pleading requirement of Rule 9(b) applies to § 523(a)(2)(A) because that provision

involves fraud.   Actual fraud under § 523(a)(2)(A) requires a creditor to prove: "(1) the debtor

made representations; (2) at the time they were made, the debtor knew they were false; (3) the

debtor made the representations with the intention and purpose to deceive the creditor; (4) the

creditor relied on such representations; and (5) the creditor sustained losses as a proximate result

of the representations."[22]   In the Fifth Circuit, to withstand dismissal, a party pleading fraud must

include "time, place and contents of the false representations, as well as the identity of the person

making the misrepresentation and what [that person] obtained thereby."[23]   Additionally, the

pleadings must explain why the alleged misrepresentations are fraudulent.[24]   To meet the

pleading requirement for intent, "[the] plaintiff must set forth specific facts that support an

inference of fraud[ulent intent]."[25]

There are three alleged misrepresentations in the Complaint's statement of facts: (1) the

loan application lists a Wells Fargo account and a Bank of America account,[26] both of which

---

[19] *Id.*
[20] *Id.*
[21] FED. R. CIV. P. 9(b).
[22] *Recoveredge, L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir. 1995) (citing *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).
[23] *Williams v. WMX Techs., 112 F.3d 175, 177 (5th Cir. 1997)* (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks omitted).
[24] *Id.* (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d. Cir. 1993)).
[25] *Tuchman*, 14 F.3d at 1068.
[26] ECF No. 1 at ¶ 10.

never existed; (2) Barnett submitted "falsified" bank statements[27]; and (3) a cashier's check was presented at closing from the Wells Fargo account that never existed.[28]  Barnett maintains that Shellpoint has not met the pleading particularity required by Rule 9(b) and thus, Shellpoint's Complaint should be dismissed.

### 1.  The Loan Application

Barnett asserts that Shellpoint has not explained its belief that a Wells Fargo account ending in 5748 and a Bank of America account ending in 1178 "never existed" at the time of the alleged misrepresentation.[29]  Because the Complaint does not state when the alleged misrepresentation regarding the bank accounts occurred or why Shellpoint believes that the representation was false, Barnett asserts that the Complaint fails to plead a claim under § 523(a)(2)(A) regarding the alleged misrepresentations with the level of particularity required by Rule 9(b).[30]

### 2.  The Falsified Bank Statements

Barnett asserts that the Complaint's allegation regarding the "falsified" bank statements contains almost none of the details required to meet Rule 9(b)'s pleading requirements.[31]  Barnett maintains that the Complaint does not allege which bank statements were falsified nor does it identify what information contained in those bank statements was false, why the allegedly false information in the bank accounts was fraudulent, or why Shellpoint believes that the information is false.[32]  Further, protests Barnett, the Complaint does not allege when these bank statements were submitted.[33]  For all of these reasons, asserts Barnett, the Complaint fails to plead a claim

---

[27] *Id.* at ¶ 11.
[28] *Id.* at ¶ 12.
[29] ECF No. 9 at 5.
[30] *Id.*
[31] *Id.* at 6.
[32] *Id.*
[33] *Id.*

under § 523(a)(2)(A) on the basis of these "falsified" bank statements with the level of particularity required by Rule 9(b).[34]

### 3. The Cashier's Check

Barnett asserts that the Complaint alleges only that the cashier's check "appeared to have come from the Wells Fargo account that never existed and bore Defendant's name" and does not allege how Shellpoint or Mortgage Bank of California, its predecessor-in-interest, was harmed by the cashier's check, as it is required to plead.[35]  As Barnett correctly states in his Motion to Dismiss, to meet the heightened pleading requirements of Rule 9(b), Shellpoint must explain how Shellpoint was harmed by Barnett's allegedly fraudulent conduct.[36]  Merely alleging fraudulent activity, but failing to explain how that activity has operated to the detriment of the complaining party is insufficient.[37]  Barnett argues that Shellpoint has failed to show how the cashier's check harmed Shellpoint or Mortgage Bank of California, especially where the payee on the cashier's check is Phantom Capital, not Mortgage Bank of California.[38]

Moreover, Barnett asserts that the Complaint does not allege that the cashier's check was presented to Mortgage Bank of California or that Mortgage Bank of California was even aware of it.[39]  Furthermore, argues Barnett, the Complaint does not explain why Shellpoint believes that the Wells Fargo account never existed or name who presented the allegedly fraudulent cashier's check and Shellpoint's Complaint does not allege that Barnett presented the check.[40]  The Complaint states only: "As part of the closing, there was presented a cashier's check in the

---

[34] *Id.*
[35] *Id.*
[36] *Bennett v. Lindsey (In re Lindsey)*, 733 Fed. Appx. 190, 193 (5th Cir. 2018).
[37] *Id.*
[38] ECF No. 9 at 6.
[39] *Id.*
[40] *Id.* at 6–7.

amount of $660,000.00 representing down payment. This cashier's check appeared to come from the Wells Fargo account that never existed and bore [Barnett's] name."[41]

Because the Complaint fails to allege how Shellpoint or Mortgage Bank of California was harmed by the cashier's check, why Shellpoint believes that the account associated with the cashier's check never existed, or who presented the cashier's check, Barnett asserts that the Complaint fails to plead a claim under § 523(a)(2)(A) on the basis of this misrepresentation with sufficient particularity to satisfy Rule 9(b).

## C. Barnett's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. Reliance

Barnett's first argument under Rule 12(b)(6) is that both theories, (i) false representations or false pretense; or (ii) actual fraud, under which Shellpoint may assert a § 523(a)(2)(A) claim, require that Shellpoint, or its predecessor-in-interest, relied on the defendant's fraudulent conduct. To establish that a representation was "false representation or false pretense" pursuant to § 523(a)(2)(A), the representation must have been: (1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied upon by the other party."[42] Likewise, actual fraud under § 523(a)(2)(A) requires proof of loss proximately caused by a debtor's representations.[43] Barnett asserts that Shellpoint has failed to state a claim under § 523(a)(2)(A) upon which relief can be granted because the Complaint never alleges that Shellpoint or its predecessor-in-interest justifiably relied on Barnett's alleged misrepresentations.[44]

### 2. Barnett's Financial Condition

---

[41] ECF No. 1 at 3.
[42] *Recoveredge, L.P.*, 44 F.3d at 1293 (quoting *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)) (internal marks omitted).
[43] *Id.*
[44] ECF No. 9 at 8.

Lastly, Barnett argues that the three representations described in the Complaint are all statements regarding the existence or qualities of assets belonging to or available to Barnett, which being statements that have a direct relation to Barnett's overall financial status, are statements respecting Barnett's financial condition.[45]  "[A] statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status."[46]  A statement about an asset that "can help indicate whether a debtor is solvent or insolvent, able to repay a debt or not," would be a statement respecting a debtor's financial condition.[47]  Because § 523(a)(2)(A) applies only to conduct *other than* statements respecting a debtor's financial condition, Barnett contends that Shellpoint has failed to state a claim under that provision.[48]

### D. Standard of Review for Motions To Dismiss Under Federal Rules Of Civil Procedure 9(b) and 12(b)(6).

Motions to dismiss are disfavored and thus, rarely granted.[49]  When considering a motion to dismiss under Rule 9(b) or Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[50]  Motions pursuant to Rule 9(b) and 12(b)(6) are analyzed similarly by courts because "a dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for a failure to state a claim."[51]  Rule 9(b), incorporated into Bankruptcy Rule 7009, requires particularity in pleading the circumstances of an alleged fraud, while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." [52]

---

[45] *Id.* at 9.
[46] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1761 (2018).
[47] *Id.*
[48] *Id.*
[49] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).
[50] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).
[51] *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993).
[52] BANKR. R. BANKR. PROC. 7009(b).

Rule 9(b)'s heightened standard is satisfied by specifying the "who, what, when, where, and how" in a complaint; however, "what constitutes sufficient 'particularity' under Rule 9(b) will necessarily differ with the facts of each case."[53] The Fifth Circuit has acknowledged that "'Rule 9(b)'s ultimate meaning is context-specific,' and thus there is no single construction of Rule 9(b) that applies in all contexts."[54] "Depending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand."[55]

This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[56]  Although this Court "will not strain to find inferences favorable to the plaintiff[],"[57] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[58]  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.

Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[59]  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[60]  "Only a complaint that states a plausible claim for relief survives a

---

[53] *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 198 (Bankr. W.D. Tex. 2015) (citing *Benchmark Elec. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

[54] *Grubbs v. Kanneganti*, 565 F.3d 180, 188–89 (5th Cir. 2009).

[55] *Id. See also IAS Servs. Grp. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018) ("[T]o state a claim for fraud, a plaintiff must plausibly plead facts establishing 'the time, place, and contents of the false representation[ ], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'") (citing to *Grubbs*, 565 F.3d at 186) (alteration in original)).

[56] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[57] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted),

[58] *See Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *to Walker v. South Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).

[59] FED. R. CIV. P. 8(a).

[60] 556 U.S. 662, 679, (2009) (quoting Rule 8(a)(2)).

motion to dismiss."[61]   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[62]   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[63]   With these standards in mind, the Court will address the single cause of action under § 523(a)(2)(A), pleaded in the Complaint.

### E.  Shellpoint's Factual Allegations

In its amended complaint, Shellpoint asserts that on December 4, 2018, Barnett executed and delivered to Mortgage Bank of California, a Note, with an original principal balance of $2,600,000.00.[64]   As security for the Note, Barnett executed and delivered to Mortgage Bank of California a Deed of Trust, also dated December 4, 2018, and filed the record with the County Clerk of Harris County, Texas against 12510 Cross Canyon Lane, Cypress, Texas 77433 ("*Property*"),[65] more specifically described as:

> LOTS 2 AND 3, IN BLOCK 4, OF BLACKHORSE RANCH, SECTION 2, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN FILM CODE NO. 450056, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

Additionally, Shellpoint asserts that Barnett has not made a single payment on the loan since its inception.[66]   On February 27, 2020, counsel for Shellpoint conducted a Rule 2004 Examination of Barnett ("*Examination*").

### 1.  The Loan Application

---

[61] *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[62] *Id.* at 678.  (citing *Twombly,* 550 U.S. at 555).

[63] *Id.*  (quoting *Twombly*, 550 U.S. at 556). *See also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

[64] ECF No. 11 at 3.

[65] *Id.*

[66] *Id.*

At the Examination, Barnett testified, inter alia, that the loan application in connection with the Property was not accurate.[67]  Barnett stated multiple times that he did not complete the loan application himself.[68]  Barnett said that he signed the loan application on page three of the package, but at the time he signed, the application was blank.[69]  In fact, Barnett testified that the first time he saw the loan application was during the Examination.[70]  According to Barnett, the application was completed by either the Property seller, Rene Gamez, the realtor, Brent, or by individuals from Mortgage Bank of California.[71]

The application also included a rent verification form signed by an individual named Jeff Levine.[72]  According to Barnett, the loan application incorrectly stated he was renting a home from Jeff Levine with an address of 43 Wood Shade when the actual property address was 2407 Ivy Run Court.[73]  Barnett explained that this was part of the application that the Mortgage Bank of California had "twisted."[74]  Barnett also testified that the last four numbers of the Wells Fargo and Bank of America accounts listed on the loan were incorrect.[75]  Barnett explained that the individuals who completed the application listed the bank account numbers and attached the bank statements in order to get the "loan done."[76]

Furthermore, Shellpoint has plead that the loan application was signed by Barnett on December 4, 2018, the same date that Barnett executed the Note on the property.[77]  That evidence, Shellpoint contends, indicates that the loan application was not completed and

---

[67] *Id.*
[68] *Id.* at 4.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*

submitted to the mortgage company prior to Barnett being offered a mortgage;[78] it appears Barnett was guaranteed a mortgage on the Property by the Mortgage Bank of California and executed a blank loan application, which was subsequently completed by persons other than Barnett.[79]

### 2.   The Falsified Bank Statements

Additionally, Shellpoint alleges that the bank accounts listed on the loan application, a Wells Fargo account ending in 5748 and a Bank of America account ending in 1178, never existed.[80] At the Examination, Barnett initially testified that he did have a Wells Fargo account ending in 5748, but that the account was closed approximately six to seven months before the Examination because there were unauthorized charges on the account.[81] When presented with a copy of the verification letter from Wells Fargo stating that an account ending in 5748 could not be located in its records, Barnett said that the last four digits of the account may be incorrect and he would need to verify through his records at home.[82] Barnett said he would provide a copy of the bank account record to his attorney, who would forward that record to Shellpoint; however, as of the date of filing the proposed amended complaint, Shellpoint has not received proof of that account.[83] Shellpoint alleges in its proposed amended complaint that Barnett's failure to produce proof of that bank account is evidence that the account never existed.[84]

When questioned about the Bank of America account ending in 1178, Barnett did not believe he still had the account.[85] Barnett was unsure whether such an account ever exited, but

---

[78] *Id.*
[79] *Id.* at 4–5.
[80] *Id.* at 5.
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*

he did confirm that the name of his business was listed on the bank statement.[86]   Barnett
maintained, however, that he does not patronize the businesses that were listed on the statement
and he did not recognize the charges therein.[87]   Barnett was presented with a verification letter
from Bank of America stating that an account ending in 1178 could not be located.[88]   Shellpoint
asked if it was fair to say that the account never existed and Barnett replied, "Possibility."[89]

Shellpoint alleges that Barnett submitted falsified bank statements to induce Shellpoint's
predecessor-in-interest, Mortgage Bank of California, to fund the loan.[90]   Shellpoint points out
that despite Barnett's inability to verify the existence of either account, those accounts were
listed on the loan application signed by Barnett.[91]

### 3.  The Cashier's Check

Shellpoint pleads in its proposed amended complaint that as part of the closing on the
Property, there was presented a cashier's check in the amount of $660,000.00 for the down
payment.[92]   Shellpoint alleges that it appears the cashier's check came from the Wells Fargo
account that never existed and bore Barnett's name.[93]   Additionally, Barnett testified at the
Examination that he never saw this cashier's check, even though the loan application signed by
him indicated that $660,000.00 was required to close.[94]   When Shellpoint asked if Barnett
recalled going to the bank to obtain the cashier's check, Barnett stated, "No. I never --- I never
had the money."[95]   Barnett testified that he already told the court that he was loaned the money
for the down payment to purchase the Property and if he had taken the money out of his account

---

[86] *Id.* at 5.
[87] *Id.* at 5–6.
[88] *Id.* at 6.
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.* at 6–7.
[93] *Id.*
[94] *Id.* at 7.
[95] *Id.*

then he would have been paying his own down payment.[96]  Barnett stated that both the Wells Fargo bank statement and the cashier's check were "bogus," thereby admitting, Shellpoint contends, that the loan application was falsified.[97]

Lastly, Shellpoint posits that because Barnett testified that he has purchased two or three properties during his lifetime, he has some knowledge as to real estate transactions.[98] Furthermore, Barnett testified that he read, understood, and signed various documents encompassing the loan application, such as the Penalty for Making False and Misleading Statements and Occupancy and Financial Status Affidavit.[99]

### F.  Shellpoint Has Successfully Pleaded A Claim Under § 523(a)(2)(A)

Shellpoint's amended complaint states that the mortgage loan debt obtained by Barnett and owed to Shellpoint, as supported by the evidence and Barnett's Examination, was procured through false pretenses, a false representation, or actual fraud within the meaning of § 523(a)(2)(A).[100]  Section 523(a)(2)(A) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or (1328(b)) of this title does not discharge an individual debtor from any debt—
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Shellpoint's proposed amended complaint, as detailed below, remedies the inadequacies alleged in Barnett's Motion To Dismiss and meets the particularity requirements of Rule 9(b). Shellpoint's proposed amended complaint specifies the who, what, when, where, and how for

---

[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Id.* at 4.

each of its factual allegations with the detail necessary to satisfy the pleading standard under Rule 9(b) in the Fifth Circuit.  Moreover, Shellpoint details by whom and how it was directly harmed by Barnett's conduct.  Taking Shellpoint's well-pleaded allegations as true, Shellpoint's complaint states a plausible claim for relief.

Moreover, Shellpoint's amended complaint points to conduct other than a statement respecting Barnett's financial condition.  The misrepresentations and fraudulent activity alleged by Shellpoint do not concern assets that "can help indicate whether a debtor is solvent or insolvent, able to repay a debt or not."[101]  Because the bank accounts, bank statements, and cashier's check were allegedly falsified and presented to fraudulently obtain a mortgage on the Property, they provide no insight into the actual financial condition of Barnett.  The allegedly falsified representations give no indication as to whether Barnett has the ability to repay the debt he owes to Shellpoint.[102]

### 1. False Pretenses

In its proposed amended complaint, Shellpoint alleges that Barnett is guilty of false pretenses because he signed a blank loan application, knowing that the application would be filled out by other persons, who would ensure that the loan would get "done."[103]  Shellpoint alleges that Barnett engaged in this fraudulent scheme knowing this was the only way he could obtain a multi-million dollar property because under normal circumstances, he would not be able afford it, as evidenced by his failure to make a single payment on the loan since its inception.[104]  Shellpoint argues that even though Barnett claims he was unaware of the information inserted into the application, the fabrication of the bank statements, and the fabrication of the money

---

[101] *Lamar, Archer & Cofrin, LLP*, 138 S.Ct. at 1761.
[102] *See id.*
[103] ECF No. 11 at 8.
[104] *Id.* at 9.

order, Barnett proved to be a beneficiary in the matter because he obtained title to a multi-million dollar property.[105]

Barnett's supposed lack of knowledge as to the specific information listed in the loan documents, Shellpoint maintains, does not dismiss his deliberate act of oblivion and knowledge that incorrect facts would be and were inserted into the loan application for his financial gain because Barnett signed the loan application and the accompanying documents, which contained this false information, in order to obtain title to the property.[106]   Barnett knowingly signed the loan application and other documents, including the Penalty for Making False and Misleading Statements and Occupancy and Financial Status Affidavit, without ever verifying the information that was subsequently listed on the documents.[107]

Finally, Shellpoint asserts that Barnett's testimony that he would have to pay back the $660,000.00 that he was "loaned" for the down payment on the mortgage proves to be another act of false pretense because the $660,000.00 never actually existed.[108]   Barnett testified that he never saw the cashier's check for $660,000.00 that was allegedly drawn from the Wells Fargo bank account listed on his loan application.[109]   Shellpoint pleads that it justifiably relied on the information provided by Barnett when it purchased the loan from Mortgage Bank of California.[110]

### 2.  False Representation

In its proposed amended complaint, Shellpoint asserts that Barnett made false representations when he knowingly signed a blank loan application for the explicit purpose of

---

[105] *Id.* at 8.
[106] *Id.* at 9.
[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] *Id.*

allowing other individuals to insert whatever information was needed to make the loan seem legitimate.[111]   Shellpoint posits that Barnett made false representations by assisting in the submission of a falsified loan application signed by Barnett, where Barnett testified under oath that he was not aware of the information listed in the loan application or the documentation submitted in support of the application.[112]   Moreover, Shellpoint argues that Barnett was also aware that he signed a mortgage on the same date that he signed the blank loan application, further emphasizing his ill will and intent to deceive.[113]

Lastly, Shellpoint contends that Barnett was aware that the information in the application was not accurate because Barnett did not provide his actual financial information to the persons who completed the forms; rather, he provided bank accounts that did not exist as well as a cashier's check that appeared to be drawn from one of the falsified bank accounts.[114]   Shellpoint contends that it justifiably relied on the information provided by Barnett when it purchased the loan from Mortgage Bank of California.[115]

### 3.  Actual Fraud

Shellpoint argues that Barnett obtained a mortgage on the Property through confirmed discrepancies on his loan application and supporting documentation along with a falsified cashier's check, and that the prior mortgage company, the Mortgage Bank of California, aided Barnett and the prior owner of the Property, Rene Gamez, in the completion of the fraudulent mortgage, which Shellpoint then purchased, without knowledge that the mortgage was obtained fraudulently.[116]   The information regarding the illegitimacy of the mortgage did not come out

---

[111] *Id.* at 10.
[112] *Id.*
[113] *Id.*
[114] *Id.*
[115] *Id.*
[116] *Id.* at 11.

until Shellpoint began to look further into the account after its purchase.[117]   Shellpoint alleges

that it was directly harmed by Barnett's conduct because its ability to sell the loan to another

party is substantially diminished.[118]   Shellpoint contends that it will be difficult and costly to sell

a loan that was obtained through fraud and has not had a single payment made on it, if it can

even find a buyer.[119]   If Shellpoint can find a buyer, it maintains, the purchase price of the loan

will be significantly decreased as a direct result of Barnett's conduct in procuring the loan.[120]

The Court therefore grants the Shellpoint's Motion for Leave to Amend Complaint where

Shellpoint has successfully pleaded a claim under § 523(a)(2)(A) and denies Barnett's Motion to

Dismiss.

### III.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket

simultaneously herewith.


SIGNED 08/25/2020.


Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[117] *Id.*
[118] *Id.* at 12.
[119] *Id.*
[120] *Id.*